UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

LINDSAY JENKINS,

                      Plaintiff,

-against-

BRUCE EATON, NEILL PARKER,
ELIZABETH MURPHY, FOREST HILLS
GARDENS CORPORATION, STEPHEN
THOMAS, MAY SCHONHAUT,
PATRICIA LANCASTER, DEREK LEE,
SANDRA BUTLER, and JOHN DOE/JANE
ROE,

                      Defendants.

**MEMORANDUM & ORDER**
**08-CV-0713 (NGG)(LB)**

------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Lindsay Jenkins ("Plaintiff" or "Ms. Jenkins"), pro se, brings suit under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq., and New York common law against three employees of the City of New York (the "Municipal Defendants"), as well as the Forest Hills Gardens Corporation ("FHG") and several of its officers, members or employees (collectively, the "FHG Defendants"). The Municipal Defendants and the FHG Defendants (collectively, "Defendants") have brought motions to dismiss the Complaint for failure to state a claim and for lack of ripeness or standing under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (See Docket Entries ## 37, 38).

For the reasons that follow, the court grants the Motion of the Municipal Defendants, and grants the Motion of the FHG Defendants in part and denies it in part.

1

## I. BACKGROUND

In reviewing Defendants' motions to dismiss, the court accepts all well-pled allegations in the Complaint as true. Boykin v. KeyCorp, 521 F.3d 202, 204 (2d Cir. 2008). The court may consider certain public documents such as "letter decisions of government agencies, published reports, records of administrative agencies, or pleadings in another action." Estate of Axelrod v. Flannery, 476 F. Supp. 2d 188, 200-01 (D. Conn. 2007) (quoting Moore U.S.A., Inc. v. Standard Register Co., 139 F. Supp. 2d 348, 363 (W.D.N.Y. 2001)); see also Jeter v. N.Y.C. Dep't of Educ., 549 F. Supp. 2d 295, 302 (E.D.N.Y. 2008) ("[A] court may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment.") (internal quotation marks omitted). When confronted with a pro se litigant, the court must construe the complaint broadly, "and interpret it to raise the strongest arguments that it suggests." Weixel v. Bd. of Educ., 287 F.3d 138, 145-46 (2d Cir. 2002) (internal quotation marks and brackets omitted).

The allegations in Ms. Jenkins' Complaint (Docket Entry # 1) do not make the factual background of the case very clear. It appears from a broad reading that Ms. Jenkins is challenging proceedings against her for violations of the New York City Building Code ("Building Code") with respect to her property at 388 Burns Street, in Forest Hills Gardens, Queens (the "Property"). (See Compl. 4, 6-7). Ms. Jenkins attaches to her Complaint two notices from the New York City Department of Buildings ("DOB") informing her that the DOB had received complaints regarding "alleged, illegal conditions" at the Property. (See id., attached notices.) The notices, dating from October and November 2007, indicate that the Department of Buildings Inspector had been unable to gain access to inspect her property, and

2

strongly encouraged her to make an appointment with the DOB. (See id.) The violations relate to alleged illegal occupancy of part of Ms. Jenkins' Property.[1]

Ms. Jenkins alleges that the violation notices were prompted by complaints from an anonymous private citizen who was motivated by racial animus. (See id. at 4, 6-9.)[2] She further alleges that the Municipal Defendants' failure to reveal the identity of the anonymous source of the complaints amounts to racial discrimination, and that the posting of notices of violations by the DOB constituted harassment. (See Compl. 6-7.) She only began to experience problems and complaints, she alleges, after she rented one of her apartments to an African American couple. (See id. at 3, 4.)

In order to provide some context for Ms. Jenkins' Complaint, the Municipal Defendants have provided documentation from administrative proceedings relating to the Property's alleged Building Code violations. Among other things, they have pointed to two "Notice[s] of Violation and Hearing" to Ms. Jenkins that the DOB posted at the front entrance of the Property. (See Murray Decl., Exs. K, L.) These administrative notices of hearing, served on February 6, 2008, set out that the Property had been altered to allow the occupancy of more than the number of families permitted by her certificate of occupancy, and that there had been work performed without a permit. (Id.) The notices directed her to obtain a permit or restore the Property to its "prior legal condition[,]" and set a hearing date before the Environmental Control Board

---

[1] The notices attached to Ms. Jenkins' Complaint bear reference numbers 4326749 and 4328776. Based on DOB administrative records submitted by the Municipal Defendants, these complaints related to "illegal occupancy" or "illegal conversion" of part of Ms. Jenkins' Property. (See Declaration of Diana M. Murray dated July 31, 2008 (Docket Entry # 37) ("Murray Decl.") Exs. B, C.) These administrative records appear to be printouts from the DOB electronic database relating to those two complaints, including information about the follow-up performed by a DOB Inspector. One of these records refers to "ILLEGAL OCCUPANCY IN THE BASEMENT," while the other refers to "ILLEGAL CONVERSION OF GAR[AG]E TO AN APT." (See id.) The Complaint names the DOB Inspector as John Doe/Jane Doe.

[2] Ms. Jenkins also alleges that the proceedings were in retaliation for letters written to the DOB. (See id. at 8-9.) She has attached to her Complaint one of the letters, dated February 7, 2008 (the "Feb. 7 Letter"). The notices of the DOB plainly predate this letter.

("ECB") for April 1, 2008. (Id.) According to Municipal Defendants, a determination regarding the violations is currently before the ECB.[3]

Regarding the FHG Defendants, Ms. Jenkins alleges that these defendants harassed and intimated her because she rented part of her Property to African American tenants. According to the Complaint, the FHG Defendants—who are officers, members and employees of FHG, "an exclusive enclave" in Queens (id. at 2)—"began months of delay in issuing parking passes to Plaintiff's tenants, before refusing to issue parking passes at all." (Id. at 4.) She alleges that these denials were stated to be in response to her Property's violations of FHG regulations, but that other properties in the development were not cited for similar violations. (Id. at 5.) She further alleges that the FHG Defendants have refused to turn over records relating to this dispute (id.), and that they have "aided and abetted" the Municipal Defendants' violations of the FHA (id. at 6-7), apparently by filing numerous anonymous complaints with the DOB (Feb. 7 Letter 3).

Ms. Jenkins' claims are brought under the FHA for discrimination based upon race and gender; she also asserts state law claims of slander of title, defamation, and duress. (See id. at 1, 10, 11, 12, 13.) Ms. Jenkins seeks $10 million from the FHG Defendants, $1 million from the Municipal Defendants, as well as injunctive and/or declaratory relief. (See id. at 9-10.)

## II.  DISCUSSION

### A.  Municipal Defendants

The Municipal Defendants have moved to dismiss on various grounds. (See Memorandum of Law in Support of Municipal Defendants' Motion to Dismiss (Docket Entry # 37) ("Munic. Mem.").) They argue that Plaintiff's claims are not ripe for judicial determination

---

[3] A Notice of Appearance in those proceedings is included in the Murray Declaration at Exhibit O; appearance for Ms. Jenkins was made by "A.R. Martin," who is listed as her "Attorney In Fact."

because of the proceeding pending before the ECB relating to the Property's Building Code violation. (See id. at 2, 3.) They also argue that Plaintiff does not have standing to bring claims under the FHA because she does not allege that their actions had any discriminatory effect on Plaintiff's African American tenants or her relationship with them. (See id. at 7-9.) Further, the Municipal Defendants argue that Ms. Jenkins has failed to adequately allege, or provide a basis to infer, racial or gender-based animus on the part of Municipal Defendants. (See id. at 11, 14.)[4] Moreover, they argue that the allegations do not support a retaliation claim based on Ms. Jenkins' letter because the complaints and notices predate the letter. (See id. at 12-13.)[5]

Ms. Jenkins replies that the Municipal Defendants have submitted evidentiary materials that should not be considered on a motion to dismiss. (See Motion to Strike or, In the Alternative to Summarily Deny Defendants' Motions to Dismiss (Docket Entry # 39) ("Pl. Mem.") 3.) She argues that her Complaint is sufficient to state a claim under Boykin, 521 F.3d at 212-16, because it alleges that "defendants have taken discriminatory action against her real estate which is available to the public for rental, and that these actions have unlawfully been motivated by racial and gender bias and animus." (Id. at 4-5.) She also argues that her claims are based on the posting of "unadjudicated accusations lodged by the FHG Defendants as part of a civil rights (FHA) conspiracy." (Id. at 5.)

Although formally stated only under the FHA, it appears that Ms. Jenkins is also attempting to bring constitutional due process and equal protection claims against the Municipal Defendants relating to the Property's alleged violations of the Building Code. Regarding due

---

[4] They argue that there is no indication in the Complaint of any discriminatory motive in the enforcement of the complaint process for a Building Code violation. They explain that the investigation of complaints and issuance of notices is mandated by the New York City Charter, and that their refusal to provide the identity of complainants is required by the New York City Administrative Code. (See id. at 11-12.)

[5] Municipal Defendants also argue that the Complaint fails to state a claim against particular individuals, that the court should decline supplemental jurisdiction over Plaintiff's state law claims, or that those claims should be dismissed. (See id. at 17-23.)

5

process, much of her Complaint is directed toward challenging the adequacy of the ECB administrative proceedings. (See Complaint 11 ("Accusations that Plaintiff has somehow violated local law slanders her title, and places a cloud on her ability to resell or otherwise dispose of her property, all without any prior hearing, notice due process or opportunity to be heard); see also Pl. Mem. 6 (challenging reliance on "anonymous complaints by an anonymous individuals in a 'hearing' that represents a sham and mockery of [Due] Process . . .").) Regarding equal protection and the FHA, she challenges the allegedly discriminatory or selective enforcement of the Building Code. (See Feb. 7 Letter 5 ("if my property is non-conforming, there are dozens of other properties in [FHG] that have also been non-conforming for decades").

In order to be ripe for adjudication, Ms. Jenkins' challenge to the determination that her Property violates the Building Code requires a final administrative decision. See Reifler v. City of Poughkeepsie, No. 96-9604, 1997 WL 383438, at *2 (2d Cir. July 9, 1997) ("Administrative agency action is not ripe for review unless the agency has rendered a final decision.") (citing Williamson County Regional Planning Comm. v. Hamilton Bank, 473 U.S. 172, 186 (1985)). This ripeness requirement extends both to equal protection and due process challenges, see Dougherty v. Town of North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002) ("The ripeness requirement . . . has been extended to equal protection and due process claims asserted in the context of land use challenges."), as well as to related claims under the FHA, see S&R Dev. Estates, LLC v. Bass, 588 F. Supp. 2d 452, 461 (S.D.N.Y. 2008) ("Courts in this Circuit have also applied the ripeness doctrine to FHA claims."). To the extent that Plaintiff's Complaint challenges the determination of illegal occupancy made by the Municipal Defendants (see, e.g., Compl. 6), her challenge is not yet ripe for judicial determination.

This ripeness requirement does not extend, however, to claims based on immediate injury. See Dougherty, 282 F.3d at 90 (excluding from ripeness inquiry claim based on immediate injury). In this regard, Ms. Jenkins' Complaint alleges that the Municipal Defendants have posted "unadjudicated complaints" for Building Code violations on the DOB website and have posted notices of violation at her Property "as part of a civil rights (FHA) conspiracy." (Pl. Mem. 5.) From the DOB records submitted by the Municipal Defendants, it appears that five such complaints were lodged relating to the "illegal occupancy" or "illegal conversion" of Ms. Jenkins' Property. (See Murray Decl., Exs. A – F.) On account of these postings, Plaintiff alleges, she has been "flooded with unwanted contacts," she has been embarrassed, and the title to her property has been "clouded." (Pl. Mem. 5.)

To the extent that these are the kind of immediate injuries excepted from a ripeness requirement, Ms. Jenkins does not specify how they fall under the FHA. The FHA "prohibits discrimination in the housing market based on, inter alia, race, color, religion, sex, national origin, or disability." United States v. Space Hunters, Inc., 429 F.3d 416, 419 (2d Cir. 2005). It "prohibits governmental entities from implementing or enforcing housing policies in a discriminatory manner." Valdez v. Town of Brookhaven, No. 05-cv-4323(JS)(ARL), 2005 WL 3454708, at *12 (E.D.N.Y. Dec. 15, 2005) (quoting Tsombanidis v. West Haven Fire Dep't., 352 F.3d 565, 573 (2d Cir. 2003)); see also Anderson Group, LLC v. City of Saratoga Springs, 557 F. Supp. 2d 332, 339 (N.D.N.Y. 2008) ("The FHA prohibits the implementation or enforcement of housing policies or zoning ordinances in a discriminatory manner because of race, color, religion, sex, familial status, or national origin.") (internal quotation marks omitted).

The policy that Ms. Jenkins appears to be challenging is the DOB's posting of "unadjudicated" complaints relating to Building Code violations on their agency website and at

7

her Property. She does not allege, however, that this policy is enforced in a discriminatory manner—that is, Ms. Jenkins is not claiming that the Municipal Defendants or the DOB have selectively posted complaints relating to Ms. Jenkins' Property based on race, gender, and/or retaliation. Instead, she challenges the fact that complaints are allowed to be posted at all, apparently because such posting effectively publishes statements by anonymous complainants who could be motivated by discriminatory animus.

Although it is not clear whether such a theory is covered by the FHA, to the extent it is covered it would proceed under "a theory of disparate impact or one of disparate treatment." LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 424 (2d Cir. 1995); see also Valdez, 2005 WL 3454708, at *12. In this regard, it appears that the Complaint attempts to proceed under the latter theory, under which "a plaintiff can establish a prima facie case by showing that animus against the protected group 'was a significant factor in the position taken' by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive." LeBlanc, 67 F.3d at 424 (quoting United States v. Yonkers Bd. of Educ., 837 F.2d 1181, 1217, 1223, 1226 (2d Cir. 1987)).[6] On a motion to dismiss, the court does not consider whether a prima facie case has been established by the allegations in the Complaint, but only whether a claim for disparate treatment has been stated. See Boykin, 521 F.3d at 212 (plaintiffs need not "plead facts sufficient to establish a prima facie disparate treatment claim").

But the Complaint does not state such a claim against the Municipal Defendants. Ms. Jenkins' Complaint alleges that a discriminatory motive was held by the anonymous complainant or complainants who filed complaints with the DOB, not by the Municipal Defendants

---

[6] There is no indication that Ms. Jenkins is pursuing a "disparate impact" challenge, which would require a showing of an "'(1) . . . outwardly neutral procedures, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices.'" Valdez, 2005 WL 3454708, at *13 (quoting Tsombanidis, 352 F.3d at 574-75).

8

themselves. (See Compl 7-8.) The only action of the Municipal Defendants is the neutral application of a policy of posting of complaints about violations of the Building Code, following up for inspection, and posting notices about contacting the agency. Furthermore, Ms. Jenkins' Complaint does not actually mention either individual Municipal Defendant, and, regarding Municipal Defendant Butler, the February 7 Letter (attached to the Complaint) states only that Ms. Butler once refused to provide "the full complaint files" of the DOB, that she did not reduce this refusal to writing, and that she did not return Ms. Jenkins' phone messages. (Feb. 7 Letter 4.) The discrimination alleged here is not—as would be required for a disparate treatment case—discrimination on the part of Municipal Defendants or those to whom they are knowingly responsive.[7]

Ms. Jenkins also challenges the posting of notices as state law claims of slander of title and defamation. (See Compl. 11-12.) The court dismisses these claims. Slander of title requires "(1) a communication falsely casting doubt on the validity of complainant's title, (2) reasonably calculated to cause harm, and (3) resulting in special damages." Rushing v. Nexpress Solutions, Inc., No. 05-cv-6243(CJS), 2009 WL 104199, at *6 (W.D.N.Y. Jan. 14, 2009) (quoting Brown v. Bethlehem Terrace Assoc., 525 N.Y.S.2d 978 (3d Dep't 1988)); see also Kamat v. Kurtha, No. 05-cv-10618(KMW)(THK), 2008 WL 5505880, at *9 (S.D.N.Y. Apr. 14, 2008)). The internet postings reflecting complaints that were undisputedly made to the DOB, as well as the notices at her Property, did not falsely cast doubt on Plaintiff's ownership of the Property or the validity of her title, and it is unclear how they could. See Ferran v. Belawa, 660 N.Y.S.2d 488, 491 (3d Dep't 1997) (claim for slander of title when "defendants have not only interfered with their

---

[7] To the extent that Ms. Jenkins alleges that a discriminatory motive can be inferred from the fact that the Municipal Defendants have refused to disclose the source of complaints that the Property was in violation of the Building Code, (Compl. 7-8), this alone would be insufficient to raise an inference of discrimination. The New York City Administrative Code provides that the names and residences of complainants are excluded from information available to the public, see N.Y.C. Administrative Code § 28-103.18.1, and this was the reason stated in the formal administrative denial of Ms. Jenkins' request for that information (See Murray Decl. Ex. R).

9

property rights but also have asserted an ownership interest in such land"). The statements challenged are concededly true statements that complaints of illegal occupancy had been filed relating to the Property, and cannot support a claim.

Similarly, regarding defamation, the cause of action in New York requires: "(1) a false and defamatory statement of fact; (2) regarding the plaintiff; (3) publication by defendant to a third party; and (4) injury to the plaintiff as a result thereof." Mills v. Miteq, Inc., No. 06-cv-0752 (SJF)(AKT), 2008 WL 350922, at *2 (E.D.N.Y. Feb. 7, 2008) (citing Weldy v. Piedmont Airlines, Inc., 985 F.2d 57, 61 (2d Cir. 1993)). The allegations in the Complaint do not state a defamation claim. As stated against the Municipal Defendants, the statements Ms. Jenkins' appears to challenge are the postings indicating that complaints were filed against Ms. Jenkins' Property. The Complaint clearly concedes that such complaints were, in fact, filed and there is no false statement alleged, as required for a defamation claim. See Necula v. Conroy, No. 96-cv-8990(RPP), 2000 WL 877009, at *10 (S.D.N.Y. Jun 30, 2000).[8]

For the foregoing reasons, the court dismisses, for lack of ripeness, Plaintiff's challenges under the Constitution and the FHA relating to the DOB's land use decision, and dismisses for failure to state a claim Plaintiff's challenge to the posting of notices and violations.

### B. FHG Defendants

Although the Complaint contains primarily vague, conclusory and rambling allegations, it appears that Ms. Jenkins challenges the actions of the FHG Defendants under 42 U.S.C. § 3617, which makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in

---

[8] The Municipal Defendants point out that the posting of a complaint regarding the unsafe condition of property is not defamatory in New York. (Munic. Mem. 22. (citing MacLauchlin v. Village of St. Johnsville, 235 A.D.2d 702, 703 (N.Y. App. Div. 3d Dep't. 1997) ("the statement 'that the building was unsafe' was not defamatory" because "the statement by its terms is not likely to expose plaintiffs to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of them in the minds of right-thinking persons" and "was not 'of and concerning' plaintiffs") (internal citation and some quotation marks omitted)); see also Hahn v. City of Rensselaer, 166 A.D.2d 795, 797 (N.Y. App. Div. 3d Dep't. 1990).)

10

the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." Such a claim appears to be based on Plaintiff's allegations that, because she rented her Property to African American tenants, the FHG Defendants denied parking passes to those tenants, lodged a series of complaints with the DOB for Building Code violations, and cited the Property for violations of FHG regulations. (See, e.g., Feb. 7 Letter 2-3; Compl. 4-5, 6.) Accordingly, the court construes Ms. Jenkins' Complaint to assert a claim under the FHA that she was "coerce[d], intimidate[d], threatene[d], or interfere[d] with" by the conduct of the FHG Defendants based on the fact that she let her Property to African American tenants.

FHG Defendants move to dismiss on various grounds. (See FHG Defendants' Memorandum of Law in Support of Motion to Dismiss Complaint (Docket Entry # 38) ("FHG Mem.").) In support of their Motion, the FHG Defendants provide evidentiary materials relating to the circumstances of the denial the parking passes, as well as the Building Code violations in the case. Based on these materials they argue, among other things, that there were legitimate non-discriminatory reasons for the denial, and that Ms. Jenkins' African American tenants themselves did not believe that the denials were based on racial discrimination. (Id. at 13-15.) Ms. Jenkins objects that reliance on these materials is inappropriate on a motion to dismiss. (See Pl. Mem.) Except for recognized exceptions, the court cannot consider materials outside the pleadings on a motion to dismiss. Therefore, the FHG Defendants' arguments in this regard would be better treated on a motion for summary judgment when evidence can be considered. See Fed. R. Civ. P. 12(d). Whether Plaintiff can substantiate the allegations in the Complaint is a separate question from whether a claim is stated, and at the pleadings stage the Complaint,

11

liberally construed, need only state a claim. See Boykin, 521 F.3d at 216 ("dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases").[9]

The FHG Defendants also argue that Plaintiff does not have standing to bring a claim under the FHA. "The [FHA] provides that "an aggrieved person may commence a civil action in an appropriate United States district court . . . ."  Hack v. President and Fellows of Yale College, 237 F.3d 81, 87 (2d Cir. 2000), abrogated on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) (quoting 42 U.S.C. § 3613(a)(1)(A)). "A party is an aggrieved person[] . . . if he or she claims to have been injured by a discriminatory housing practice." Id. (internal quotation marks omitted). "The [FHA] requires only that the party "allege 'injury in fact' within the meaning of Article III of the [United States] Constitution, that is, that he allege 'distinct and palpable injuries that are fairly traceable to [defendants'] actions.'" Id. (quoting LeBlanc, 67 F.3d at 424).

The FHG Defendants argue that Plaintiff brings a claim only based on injury to her tenants on account of the denial of parking passes. But Plaintiff's claim is broader than this, as it is stated as coercion, intimidation and interference by the FHG Defendants—denying of parking passes to Plaintiff's tenants, lodging a series of public complaints with the DOB, and citing Plaintiff's Property for violations of FHG regulations—in retaliation for renting to African American tenants. The FHA's conferral of standing is extremely broad, Clearing House Association, L.L.C. v. Cuomo, 510 F.3d 105, 125 (2d Cir. 2007) (noting "powerful indicators that Congress intended expansive standing to enforce the FHA"), and has been construed to

---

[9] The FHG Defendants also argue that the individually named FHG Defendants must be dismissed because, as officers or directors of FHG, the Complaint must plead that those individual defendants committed actionable conduct themselves. (See FHG Mem. 8-9.) The Complaint sets forth numerous allegations pertaining to the "FHG Defendants" in general, and names Bruce Eaton, one of the FHG Defendants, in one particular allegation. The "FHG Defendants" is defined to include the individually named defendants, and construing the pro se Complaint broadly, the court considers it a matter of evidence rather than pleading whether any of the individual defendants are covered by Plaintiff's claims.

12

include standing to bring suit for injuries resulting from "having aided or encouraged any other person in the exercise or enjoyment of . . . a right" protected by the FHA. See Puglisi v. Underhill Park Taxpayer Ass'n, 947 F. Supp. 673, 696 (S.D.N.Y. 1996) (quoting Stackhouse v. DeSitter, 620 F. Supp. 208, 211 (N.D. Ill. 1985)).[10] Accordingly, the FHG Defendants' standing argument misconstrues the nature of the claim asserted; construed as a claim for intimidation or interference under § 3617, the allegations are sufficient to confer standing under the FHA.

Finally, the FHG Defendants also argue for dismissal of Plaintiff's state law claims. (See FHG Mem. 15-22.) Of these, only the duress claim mentions, and appears to be directed at, the FHG Defendants. In the duress count, Plaintiff alleges that, although the parking regulations adopted by FHG are "a sensible policy" for regulating parking, they have been used to "coerce a response in a totally unrelated matter having no bearing on parking." (Compl. 13.) The FHG Defendants argue that there is no substantive tort action for duress, which is, instead, a defense to breach of contract, which is not involved here. (FHG Mem. 20-21.) Plaintiff does not address this argument, and, as the FHG Defendants point out, it is unlikely that duress is recognized as a tort in New York. See Bennett v. Town of Riverhead, 940 F. Supp. 481, 492 (E.D.N.Y. 1996) ("The court has been unable to find any decisions by New York's highest court that explicitly recognize the existence of duress . . . as [a] tort[]."). Although the court in Bennett did recognize a tort of duress, that case involved the "unlawful threat of arrest" by a police officer. Id. That sort of extreme conduct is not alleged here, and other courts have determined that duress is not a tort cause of action. Weiss v. La Suisse, 69 F. Supp. 2d 449, 462 (S.D.N.Y. 1999) ("Of course, there is no such cause of action; duress is a defense, and one that can be asserted only in the most

---

[10] Reviewing the district court on appeal in Puglisi, the Second Circuit stated that "the district court held that Puglisi had standing to assert his claims under the Fair Housing Act, 42 U.S.C. § 3617 . . . [and] [w]e agree with this holding for substantially the reasons stated by the district court." Puglisi v. Underhill Park Taxpayers Assoc., No. 96-9584, 1997 WL 609212, at *2 n.4 (2d Cir. Oct. 3, 1997).

extreme circumstances."). In the circumstances of this case, the court does not recognize a tort of duress.

## III. CONCLUSION

Based on the foregoing, the court grants the Municipal Defendants' Motion to Dismiss. Ms. Jenkins' claims against the Municipal Defendants relating to the administrative adjudication of illegal occupancy are dismissed for lack of ripeness; her claims relating to the posting of notices are dismissed for failure to state a claim. The court grants in part and denies in part the FHG Defendants' Motion to Dismiss. Ms. Jenkins' claim against the FHG Defendants based on the tort of duress is dismissed for failure to state a claim, but her FHA claim is not dismissed. Although the FHG Defendants may choose to rely on the evidentiary materials they submitted in a motion for summary judgment, the court does not deem the pleadings stage the appropriate point at which to assess the evidentiary support for Ms. Jenkins' allegations.

Accordingly, the Municipal Defendants Motion is GRANTED, and the FHG Defendants Motion is GRANTED in part and DENIED in part, all as set forth herein.

SO ORDERED.

Dated: Brooklyn, New York  
March 26, 2009

s/Nicholas G. Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge