D|F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
LINDSAY JENKINS,

                Plaintiff,

        -against-

BRUCE EATON, NEILL PARKER, ELIZABETH
MURPHY, FOREST HILLS GARDENS
CORPORATION, STEPHEN THOMAS, MAY
SCHONHAUT, and JOHN DOE/JANE ROE,

                Defendants.
----------------------------------------------------------------X
LINDSAY JENKINS,

                Plaintiff,

        -against-

DIANA MURRAY, sued in her individual and
personal capacity, MICHAEL CARDOZO, sued in
his individual and personal capacity, K
GEORCANTZIS, sued in his individual and
personal capacity, SUZANNE BEDOE, sued in her
official capacity, SHARON ALBO, sued in her
individual and personal capacity, and JOHN
DOE/JANE ROE,

                Defendants.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**
**08-CV-0713 (NGG)(LB)**
**09-CV-0163 (NGG)(LB)**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 18 2009 ★

BROOKLYN OFFICE

NICHOLAS G. GARAUFIS, United States District Judge.

      Forest Hills Gardens in Queens is a quaint, 142-acre, Tudor-style, 19th-century hamlet surrounded by a bustling, 21st-century metropolis. The community is managed by Defendant

1

Forest Hills Gardens Corporation ("the FHG Corporation") – by its own account, an "active" or "obsessive, some would say" property owners' association.[1] Without the "blessing" of the FHG Corporation, residents of Forest Hills Gardens may not make modifications to their homes.[2] The streets of Forest Hills Gardens are owned and maintained by the FHG Corporation, and the Corporation enforces a "parking control program" in order to preserve the "aesthetic conditions" of the neighborhood.[3] To say that the FHG Corporation closely guards the character of Forest Hills Gardens is, by any account, a vast understatement.

In 2006, pro se Plaintiff Lindsay Jenkins ("Plaintiff" or "Jenkins") purchased property in Forest Hills Gardens and, without pre-approval, began renovating the interior and exterior of 388 Burns Street (the "Property").[4] In violation of restrictive covenants and the Property's Certificate of Occupancy, she converted the Property's two-family residence into a three-family dwelling.[5] The FHG Corporation eventually responded by denying parking decals to Plaintiff's tenants, and recording the Property's violations with the City Register in the Borough of Queens.[6] Thereafter, the Department of Buildings initiated proceedings against Plaintiff for violating the Property's Certificate of Occupancy and the New York City Building Code.[7]

In the two cases before the court, Plaintiff claims that Defendants took these actions because she rented the Property to an African-American couple. (See Jenkins v. Eaton, No. 08-cv-0713 (NGG)(LB), Docket Entry # 1 (E.D.N.Y. Feb. 19, 2008) ("Jenkins I"); Jenkins v.

---

[1] See Local Rule 56.1 Statement of Material Facts (Docket Entry # 61) ("56.1 Statement") ¶ 12 (internal quotation marks and citation omitted); see also Affidavit of Tracy Peterson (Docket Entry # 61) ("Peterson Aff."), Ex. JJ (Forest Hills Gardens promotional materials).

[2] See Peterson Aff., Ex. JJ.

[3] See 56.1 Statement ¶¶ 56-58.

[4] See id. ¶¶ 10-11.

[5] See id. ¶ 49.

[6] See id. ¶¶ 52, 67, 72-74.

[7] See Jenkins v. Eaton, No. 08-cv-0713 (NGG)(LB), Docket Entry # 47, at 3 (E.D.N.Y. Mar. 26, 2009).

2

Murray, No. 09-cv-0163 (NGG)(LB), Docket Entry # 1 (E.D.N.Y. Jan. 15, 2009) ("Jenkins II"). In Jenkins I, she has sued the FHG Corporation and several of its personnel under the Fair Housing Act, 42 U.S.C. § 3601 et seq. (the "FHA") and various state laws; in Jenkins II, she has added several municipal personnel, including members of the New York City Law Department, as well as a former tenant of her Property. (Id.) She seeks, inter alia, $10 million in damages. (See Jenkins I, Complaint 9-10.)

Pending before the court are dispositive motions from Defendants in both cases. For the reasons set forth below, the court grants the motions. In doing so, the court observes that Jenkins is a frequent litigant in this court and has repeatedly engaged in abusive litigation tactics. The court warns Plaintiff that federal courts are authorized to impose sanctions upon pro se litigants who engage in abusive or harassing behavior.

## I. BACKGROUND

### A. Factual Background

According to the FHG Defendants, the FHG Corporation "is a not-for profit corporation that owns a private residential community known as Forest Hills Gardens, located in Queens County." (Jenkins I, Local Rule 56.1 Statement of Material Facts (Docket Entry # 61) ("56.1 Statement") ¶ 3 (internal quotation marks and citation omitted).) The FHG Corporation owns and maintains approximately seven miles of streets within Forest Hills Gardens. (Id. ¶ 4.) The Corporation subjects Forest Hills Gardens' properties to "strict guidelines" and approval requirements with respect to the alterations that may be made to them. (Id. ¶¶ 15, 17-18.) "All property owners within Forest Hills Gardens are subject to [these] various restrictive covenants which, inter alia, regulate alterations and new construction." Forest Hills Gardens Corp. v. Velonskis, 309 A.D.2d 732, 733 (2d Dep't 2003). Enforcement of these regulations falls to the

FHG Corporation's Architectural Committee, of which three of the FHG Defendants are members. (See id. ¶¶ 5, 6, 8.) One method for enforcing these restrictions is to deny parking rights within the community. (See id. ¶ 60; see also Jenkins I, Affidavit of May Schonhaut (Docket Entry # 61) ("Schonhaut Aff."), Ex. J (parking control program).)

Since the year 2000, over one hundred violations have been recorded for various properties throughout the neighborhood. (See Schonhaut Aff., Ex. R.) These violations include such infractions as "[u]napproved windows," "unapproved rear Door installation," "[f]ence exceeds approved height," "[u]napproved enlarged back patio," "[u]napproved walkway construction," "[u]napproved chimney repairs," and "unapproved exterior alterations." (Id.) The FHG Defendants point out that at least forty-one properties have been cited for architectural violations since 2006. (See 56.1 Statement ¶ 76; see also Schonhaut Aff., Ex. R.) Tenants cited for such violations have had their parking passes revoked or rendered null and void. (See 56.1 Statement ¶ 76; see also Schonhaut Aff., Ex. S-U.)

In 2006, Plaintiff bought the Property and another lot in Forest Hills Gardens. (See 56.1 Statement ¶¶ 10-11; Jenkins I, Affidavit of Catherine M. Eiring (Docket Entry # 61) ("Eiring Aff."), Ex. AA.) As a new Forest Hills Gardens property owner, Plaintiff received ample notice about the land-use restrictions imposed on her properties. For example, the "Welcome Letter package" for new property owners includes a discussion of the restrictions on alterations, including an admonition that "[p]rior approval by the Architecture Committee and the Board of Directors is absolutely required for any alterations to site or structure." (See Eiring Aff., Ex. BB.) The FHG Corporation enclosed a copy of the guidelines and restrictive covenants with materials provided to Plaintiff. (See id.; see also 56.1 Statement ¶¶ 21-27.)

4

Without obtaining approval, Jenkins began making alterations to the Property. (See Jenkins I, Affidavit of Bruce Eaton (Docket Entry # 61) ("Eaton Aff.") ¶ 19; see also Schonhaut Aff., Ex. R; Jenkins I, Complaint.) When these renovations came to the attention of the FHG Corporation, it took steps to remind Plaintiff of the restrictions on her Property and to assess the extent of the violation. (See 56.1 Statement ¶¶ 32-39.) The Property was determined to have a total of nine architectural violations, including "a new entrance door to the side of the garage (at the cellar level) and new windows on top of the garage." (See id. ¶¶ 39-43.) These alterations suggested to the FHG Corporation that the Property had been "converted from a two-family to a three-family dwelling." (See id.) A restrictive covenant applicable in Forest Hills Gardens demands that all private dwellings be occupied by no more than two families. (See id. ¶ 19.)

From approximately November 2007 through January 2008, the FHG Corporation wrote Plaintiff a series of letters and took a series of other steps to persuade her to bring the Property into compliance with community regulations. (See id. ¶¶ 44-52.) The FHG Corporation asked Plaintiff, in writing, to obtain approval for the construction work being done (Jenkins I, Affidavit of Neill E. Parker, Jr. (Docket Entry # 61) ("Parker Aff."), Ex. Z), to revert the property to a two-family unit (Eaton Aff., Ex. H), and to take immediate steps to remedy the illegal conversion of the property to a three-family unit (id., Ex. I). Rather than comply, Plaintiff threatened to sue the FHG Corporation and continued to show the Property's additional unit to potential renters. (See 56.1 Statement ¶¶ 55, 48.)

In late 2007, an inspector from the New York City Department of Buildings ("DOB"), acting pursuant to an anonymous complaint, attempted several times to gain access to the property for inspection. (See Jenkins I, Memorandum & Order dated Mar. 26, 2009 (Docket Entry # 47) ("Dismissal Order"), at 2-3.) In February 2008, the DOB issued a Peremptory

5

Vacate Order for the additional residential unit that Plaintiff had added to the Property. (See Jenkins II, Declaration of Mary O'Sullivan (Docket Entry # 16) ("O'Sullivan Aff."), Ex. 3.) According to the DOB, the addition of this unit posed "an imminent danger to the life and safety of the occupants," because of various deficiencies. (Id.) The DOB issued to Plaintiff Notices of Violation and Hearing for illegally converting the Property into a three-family dwelling and performing construction work without a permit. (Id., Ex. 7.) The DOB has conducted subsequent inspections of the Property (see id., Exs. 4, 6) in connection with ongoing proceedings before the New York City Environmental Control Board about this matter.

### B. Procedural Background

In Jenkins I, Plaintiff brought suit under the FHA and New York common law against three employees of the City of New York (the "Municipal Defendants"), as well as the FHG Corporation and several of its officers, members or employees (collectively, the "FHG Defendants"). (See 56.1 Statement ¶¶ 5-9.) In Jenkins II, Plaintiff added claims against various other municipal personnel, including members of the New York City Law Department, as well as a person allegedly in possession of part of the Property (the "Jenkins II Defendants").

In Jenkins I, the court dismissed all of Plaintiff's claims against the Municipal Defendants. The court concluded that these claims were not ripe for judicial determination because the municipality had not yet reached a final decision on whether her Property violated the New York City Building Code. (See Dismissal Order 6.) The court also concluded that to the extent Plaintiff alleged "immediate injury" resulting from the municipal proceedings, she had failed to state a claim on which relief could be granted. (See id. at 7-10.) However, Plaintiff's FHA claim against the FHG Defendants under 42 U.S.C. § 3617 survived the pleadings stage. The court found that Jenkins had adequately pleaded that the FHG Defendants had intimidated

and interfered with her property in retaliation for her renting to African-American tenants. (See id.)[8]

Now before the court is the FHG Defendants' Motion for Summary Judgment on this remaining claim (See Jenkins I, Docket Entry # 61.) Also before the court is the Jenkins II Defendants' Motion to Dismiss. (See Jenkins II, Docket Entries ## 15-16.) In accordance with the court's individual rules, both Defendants sought a pre-motion conference for their motions, and both attended the conference and received a briefing schedule. (See Jenkins I, Docket Entry # 56, at 4-5; Jenkins II, Docket Entry # 20, at 4-5.) The court unsuccessfully attempted to contact Plaintiff about this conference using the contact information she provided. By fax, and contrary to the court's individual rules, Plaintiff indicated that she opposed the granting of a pre-motion conference. (See Jenkins I, Docket Entry # 52; Jenkins II, Docket Entry # 8.) Following the conference, Plaintiff was notified of the briefing schedule, and subsequently sought an extension of time to respond, which was granted. (See Jenkins I, Docket Entry # 56, at 4-5; Jenkins II, Docket Entry # 20, at 4-5.) Nearly two weeks after her response was due in both cases, Plaintiff requested another extension. (See Jenkins I, Docket Entry # 53; Jenkins II, Docket Entry # 21.) Jenkins provided inadequate justification for this request, and it was denied. (See Jenkins I, Docket Entry # 60; Jenkins II, Docket Entry # 24.)

Plaintiff is a pro se litigant who, in her numerous cases in federal court, has repeatedly ignored the rules and deadlines that all litigants are expected to follow. See, e.g., id.; see also Jenkins v. Bock, No. 09-CV-3722 (NGG), Docket Entry # 3 (E.D.N.Y. Sept. 2, 2009); Jenkins v. Sladkus, 226 F.R.D. 206, 207 (S.D.N.Y. 2005); Jenkins v. Saft, No. 04-CV-1491 (NGG), Docket Entry # 8 (E.D.N.Y. Apr. 13, 2004). In this case, she has failed to comply with the court's

---

[8] The court dismissed, however, Plaintiff's state law claim against the FHG Defendants. (See Dismissal Order.)

7

deadlines and has not responded to the merits of the motions before the court. The court considers the Defendants' motions to be unopposed.

Nevertheless, the court may not grant the motions by default. With respect to the FHG Defendants' Motion for Summary Judgment, the court "may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'" Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (quoting Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001)). The court must therefore review the evidence presented by the FHG Defendants to determine whether they are entitled to judgment as a matter of law.[9] Similarly, with respect to the Jenkins II Defendants' Motion to Dismiss, the court must examine the merits of their contentions. See Foster v. Phillips, No. 03-CV-3629 (MBM)(DF), 2005 WL 2978686, at *3 (S.D.N.Y. Nov. 7, 2005) (noting that court "cannot grant a motion to dismiss solely on the ground that it is unopposed," but must "review the merits of the motion and determine whether the movant has carried its burden").

## II. DISCUSSION

### A. The FHG Defendants' Motion for Summary Judgment

The court previously construed Plaintiff's pro se Complaint to be asserting a claim under 42 U.S.C. § 3617, which "makes it unlawful to 'coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.'" (See Jenkins I, Docket Entry # 47, at 10-11 (quoting § 3617).) "To establish a prima facie case of retaliation

---

[9] In doing so, the court "may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." Id. at 244. The court has reviewed the evidentiary submissions in accordance with this standard.

under Section 3617 of the FHA, Plaintiff must allege that (1) he was engaged in a protected activity, (2) Defendants were aware of this activity, (3) Defendants took adverse action against Plaintiff, and (4) a causal connection exists between the protected activity and the adverse action." Elmowitz v. Executive Towers at Lido, LLC, 571 F. Supp. 2d 370, 376 (E.D.N.Y. 2008).

Construing the Complaint liberally, the court considered Plaintiff to claiming that she "was coerced, intimidated, threatened, or interfered with by the conduct of the FHG Defendants based on the fact that she let her Property to African-American tenants." (Id. at 11 (internal quotation marks and alterations omitted); see Puglisi v. Underhill Park Taxpayer Ass'n, 947 F. Supp. 673, 706 (S.D.N.Y. 1996) ("To state a claim, [Plaintiff] must allege and show that defendants engaged in the prohibited conduct of coercing, intimidating, threatening or interfering with him and his right to aid or encourage his African-American tenants in the exercise of their rights under the Act."). The court assumes the parties' familiarity with that ruling.

The court's conclusion that Plaintiff stated a claim for harassment under § 3617 was premised upon her allegations that, in response to her renting to African-American tenants, the FHG Defendants had (1) found unwarranted architectural violations on her Property, (2) discriminatorily denied parking passes to her tenants, and (3) lodged anonymous a series of complaints with the DOB. The evidence submitted by the FHG Defendants completely refutes these allegations. The FHG Defendants have provided extensive evidence showing that their actions were not taken for discriminatory reasons. The challenged conduct is not the product of racism, but, rather, of the FHG Corporation's unusually zealous enforcement of punctilious land-use rules intended to preserve the unique character of a neighborhood.

First, there is ample evidence that the architectural violations on Plaintiff's Property were based on the FHG Defendants' understanding of applicable restrictive covenants, rather than upon a discriminatory motive. (See 56.1 Statement ¶¶ 10-55; see also Parker Aff., Ex. Z; Eaton Aff., Exs. D, E, H, I; Schonhaut Aff., Exs. R, V-Y; Parker Aff., Ex. Z.) Second, the evidence shows that parking passes were denied to Plaintiff's tenants because of these violations, and that this enforcement measure was consistent with the FHG Defendants' approach to violations in numerous other cases. (See 56.1 Statement ¶¶ 56-77; see also Schonhaut Aff. ¶¶ 17-37 & Exs. N, R-U.)[10] And third, the evidence shows that none of the FHG Defendants made anonymous complaints to the DOB about Plaintiff's Property. (See 56.1 Statement ¶ 78; see also Eaton Aff. ¶ 39; Schonhaut Aff. ¶ 36; Parker Aff. ¶ 10; Eiring Aff. ¶ 14; Jenkins I, Affidavit of Elizabeth Murphy (Docket Entry # 61) ¶ 4; Jenkins I, Affidavit of Stephen Thomas (Docket Entry # 61) ¶ 4.) There is no evidence of any threat, harassment or intimidation on account of Plaintiff's renting her Property to African-American tenants.

Accordingly, because the evidence demonstrates the lack of a causal relationship between Plaintiff's renting to African-American tenants and the alleged actions of the FHG Defendants, Plaintiff cannot make out a prima facie case under § 3617. The court thus concludes that the FHG Defendants are entitled to judgment as a matter of law and that their Motion for Summary Judgment should be granted.

### B. The FHG Defendants' Motion for Attorney's Fees

The FHG Defendants seek attorney's fees. (See Jenkins I, Docket Entry # 61.) Such fees are available to prevailing parties in FHA cases. See 42 U.S.C. § 3613(c)(2); Tsombanidis v. West Haven Fire Dep't., 352 F.3d 565, 581 (2d Cir. 2003). Prevailing defendants, however, are

---

[10] The evidence also shows that Plaintiff's African-American tenants were allowed to park in Forest Hills Gardens without parking passes, and that these tenants did not believe that they were the victims of discrimination. (See Affidavit of Rhodine Burgess (Docket Entry # 61).)

held to a different standard than prevailing plaintiffs. "[A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Panetta v. Crowley, 460 F.3d 388, 399 (2d Cir. 2006) (internal quotation marks omitted). "A prevailing defendant need not show bad faith by a plaintiff to be entitled to attorneys' fees, though such a showing provides an even stronger basis for the award." Id. (internal quotation marks omitted).

The FHG Defendants have not briefed the propriety of attorney's fees in this case. The FHG Defendants shall file a memorandum in support of their fees request no later than December 18, 2009. Plaintiff shall file a response no later than January 29, 2010. The FHG Defendants shall file a reply no later than February 12, 2010.

## C. The Jenkins II Defendants' Motion to Dismiss

In Jenkins I, Plaintiff asserted claims against several Municipal Defendants based upon the DOB proceedings initiated against her Property. (See Dismissal Order.) In the Dismissal Order in Jenkins I, the court dismissed Plaintiff's claims against the Municipal Defendants for two reasons. First, the court concluded that "[t]o the extent that Plaintiff's Complaint challenges the determination of illegal occupancy made by the Municipal Defendants, her challenge is not yet ripe for judicial determination." (Id. at 6.) Second, the court concluded that, to the extent she asserted immediate harms that were ripe for judicial determination, she did not state a claim. (Id. at 7-10.) Her challenge to the Municipal Defendants' enforcement of the New York City Building Code – such as posting notices of violation on her Property and posting complaints on the DOB website – did not advance an FHA claim or state law claims of slander of title or defamation.

11

In this action, Plaintiff brings the same claims as in Jenkins I, but has added additional defendants. The same reasons that the court dismissed Plaintiff's action against the Municipal Defendants in Jenkins I also apply to the newly added Jenkins II Defendants. Based upon those reasons, which the court incorporates by reference here (see Dismissal Order 4-10), the court grants the Jenkins II Defendants' Motion to Dismiss.[11] In doing so, the court notes that Jenkins II is not the first example of Jenkins filing multiple suits relating to the same set of events. In two prior cases before this court, Plaintiff filed numerous actions relating to already pending litigation; the court admonished her against engaging in this practice. See Jenkins v. Saft, No. 04-CV-1491 (NGG), Docket Entry # 8 (E.D.N.Y. April 13, 2004); Jenkins v. Bock, No. 09-CV-3722 (NGG), Docket Entry # 21 (E.D.N.Y. Nov. 11, 2009). In the second of these cases, the court barred Plaintiff from filing further suits relating to the same action. (See id.)

As in those cases, Jenkins has here filed a new suit in Jenkins II rather than attempting to amend her complaint in Jenkins I. This litigation tactic wastes judicial resources, as Plaintiff has repeatedly been advised. The court again reiterates that, in future actions, Plaintiff should take care not to engage in wasteful and burdensome litigation tactics. Plaintiff is well aware that sanctions may be imposed, as they have been in the past, should she persist in such abusive conduct. See Sassower v. Field, 973 F.2d 75, 80-81 (2d Cir. 1992).[12]

---

[11] The court also grants Defendant Sharon Albo's Motion to Dismiss in Jenkins II. (See Jenkins II, Docket Entry # 15.) Albo was a tenant at the Property who received a notice from the DOB that she should vacate the Property because it was in violation of the Building Code. (See id.) She did so. (Id.) The Complaint only mentions Defendant Albo in a conclusory manner and the allegations are not sufficient to state a claim against her.

[12] The court also observes that Plaintiff has failed to sign the Jenkins II Complaint, in violation of Federal Rule of Civil Procedure 11(a). That Rule requires that "[e]very pleading, written motion, and other paper must be signed by ... by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). On June 2, 2009, the Corporation Counsel notified Plaintiff that she had relied upon a rubber-stamp signature, and invited her to correct this defect. (See O'Sullivan Decl., Ex. 1.) She has not done so. This is not the first time Plaintiff has failed to comply with this requirement. In Sladkus, supra, Judge Kaplan struck Jenkins' filings that did not bear her signature, holding that "a document bearing a rubber stamped facsimile of a signature is not 'signed' within the meaning of Rule 11(a)." Plaintiff has clearly been notified of her obligation to comply with Rule 11; this court admonishes her to comply with Rule 11 in all future filings in federal court.

## III. CONCLUSION

As set forth in this Memorandum & Order, the FHG Defendants Motion for Summary Judgment (Jenkins I, 08-CV-0713, Docket Entry # 61) is GRANTED. As set forth herein, the FHG Defendants shall file a memorandum in support of their Motion for Attorney's Fees no later than December 18, 2009. Plaintiff shall file a response no later than January 29, 2010. The FHG Defendants shall file a reply no later than February 12, 2010. This Motion is REFERRED to Magistrate Judge Lois Bloom for a Report and Recommendation.

The Jenkins II Defendants' Motion to Dismiss (Jenkins II, 09-CV-0163, Docket Entries ## 15-16) is GRANTED. The Clerk of Court is directed to enter judgment in favor of Defendants and to close Jenkins II.

SO ORDERED.

Dated: Brooklyn, New York
November 17, 2009

NICHOLAS G. GARA_
United States District Judge

13