UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
LINDSEY JENKINS,

        Plaintiff,               **REPORT & RECOMMENDATION**
                                      08-CV-713 (NGG)(LB)

     - against -

BRUCE EATON, NEILL PARKER,
ELIZABETH MURPHY, FOREST HILLS
GARDENS CORPORATION, STEPHEN
THOMAS, MAY SCHONHAUT,
PATRICIA LANCASTER, DEREK LEE,
SANDRA BUTLER and JOHN DOE/JANE ROE,

        Defendants.
-----------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

        Defendants Bruce Eaton, Neill Parker, Elizabeth Murphy, Forest Hills Gardens Corporation, Stephen Thomas, May Schonhaut, Patricia Lancaster, Derek Lee, Sandra Butler and John Doe/Jane Roe, (collectively referred to as the "FHG defendants"), bring this motion for attorney's fees against plaintiff Lindsay Jenkins pursuant to 42 U.S.C. § 3613(c)(2). The Honorable Nicholas G. Garaufis referred defendants' motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons stated below, it is respectfully recommended that defendants' motion for attorney's fees should be denied. However, it is recommended that the Court should enter a filing injunction barring plaintiff from filing any future action, pleading, amended pleading, motion or appeal[1] in federal court without first obtaining leave of Court to do so.

---

[1] Any filing injunction entered should not bar plaintiff's appeal of that particular Order.

1

## BACKGROUND

On February 19, 2008, plaintiff filed this *pro se* action against Bruce Eaton, Neill Parker, Elizabeth Murphy, Forest Hills Gardens Corporation, Stephen Thomas, May Schonhaut, Patricia Lancaster, Derek Lee, Sandra Butler and John Doe/Jane Roe, (collectively referred to as the "FHG defendants") ("Jenkins I"), alleging that defendants violated her rights under the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* ("FHA"), and various provisions of the New York State common law.[2] On March 26, 2009, the Honorable Nicholas G. Garaufis dismissed plaintiff's state law claims but determined that plaintiff's claims under the FHA, 42 U.S.C. § 3617, could proceed. (See Document 47, "Dismissal Order"). The Court determined that plaintiff adequately pleaded "a claim under the FHA that she was 'coerce[d], intimidate[d], threatene[d], or interfere[d] with' by the conduct of the FHG Defendants based on the fact that she let her Property to African American tenants." Id. at 11. Thereafter, the FHG defendants moved for summary judgment on plaintiff's FHA claim. (See Document 61). On November 18, 2009, the Court granted the Jenkins II defendants' Motion to Dismiss and granted the FHG defendants' Motion for Summary Judgment in Jenkins I. The Court also set a schedule for the FHG defendants' Motion for Attorney's Fees, and referred the motion for attorney's fees to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). (See Document 66, "Summary Judgment Order").[3]

On November 20, 2009, the FHG defendants sought to resolve the issue of attorney's fees, by offering to forego any application for attorney's fees in exchange for plaintiff's

---

[2] On January 15, 2009, plaintiff filed a companion case to the instant action, Jenkins v. Murray, 09-CV-163 (NGG) ("Jenkins II"), against members of the New York City Law Department, among others.

[3] The Court assumes familiarity with the underlying facts of this case as set forth in the November 18, 2009 Memorandum and Order ("Summary Judgment Order").

2

agreement to forfeit her appellate rights in connection with this action. (See Document 74-4, Exhibit RR). In a letter dated November 28, 2009, plaintiff responded to defendants' offer by disparaging counsel's competence and asserting that the Court's Summary Judgment Order was based on "biased excerpts." Moreover, plaintiff stated that the Court ignored the law and the facts and threatened to seek sanctions against FHG defendants' counsel. (See Document 74-4, Exhibit SS).

On November 30, 2009, plaintiff filed a Motion for Reconsideration of the Court's November 18, 2009 Order, pursuant to Federal Rule of Civil Procedure 59 and a "Motion For Leave to File One Set of Original Color Photographs." (See Documents 68 and 69). Plaintiff's Rule 59 Motion asserts that the FHG defendants and their counsel denigrated plaintiff by referring to her litigation history and accuses the Court of bias against her. Plaintiff states that "[w]hile [p]laintiff does not know the source of Judge Garaufis' disqualifying bias, it may stem from the judge's former employment in the Queens County government, where he was aware of the extortion and corruption in the Department of Buildings." (See Document 68 at 4). On March 19, 2010, the Court denied plaintiff's motions, finding "no basis for reconsideration or for the introduction of additional evidence." (See Document 79 at 3).

On December 18, 2009, the FHG defendants filed their motion seeking attorney fees and costs in excess of $48,000 for approximately 256.2 hours of attorney time and litigation costs in the amount of $276.37.[4] (See Documents 74, 75, 76). Robert J. Braverman, the partner assigned to this case, seeks fees at a rate of $210.00 per hour and the associate, Tracy Peterson, who

---

[4] Rule 54(d) of the Federal Rules of Civil Procedure provides that "costs — other than attorney's fees — should be allowed to the prevailing party." Thus, defendants' application for costs should be made to the Clerk of Court within thirty (30) days after the entry of final judgment, or, in the case of an appeal by any party, within thirty (30) days after the final disposition of the appeal. See 28 U.S.C.A. § 1920; Local Civil Rule 54.1(a).

performed the bulk of the work on this action, seeks fees at a rate of $185.00 per hour. Counsel attaches detailed time records in support of their application.[5] (See Documents 74 and 75). Plaintiff has not responded to defendants' motion.

## DISCUSSION

Notwithstanding "[t]he general rule in our legal system ... that each party must pay its own attorney's fees and expenses," Perdue v. Kenny A. ex rel. Winn, --- U.S. ----, 130 S.Ct. 1662, 1671 (2010) (citation omitted), attorney's fees are available to prevailing parties in FHA cases. See 42 U.S.C. § 3613(c)(2); Tsombandidis v. West Haven Fire Dep't., 352 F.3d 565, 581 (2d Cir. 2003).[6] However, prevailing defendants are held to a different standard than prevailing plaintiffs. "[A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Panetta v. Crowley, 460 F.3d 388, 399 (2d Cir. 2006) (citing Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978)). "A prevailing defendant need not show bad faith by a plaintiff to be entitled to attorneys' fees, though such a showing provides an even stronger basis for the award." Id. (internal quotation marks omitted).

In support of their application for attorney's fees, the FHG defendants argue that because the Court held in its March 29, 2009 Dismissal Order that the evidence defendants submitted with their initial Motion to Dismiss "tends to show that their denial of parking passes was not

---

[5] Defense counsel's request for fees is based on a negotiated rate set by the insurance company underwriting the FHG defendants' liability coverage. (See Affidavit of Robert J. Braverman, Document 74).

[6] Because 42 U.S.C. § 3613(c)(2), 42 U.S.C. § 1988(b), 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 12205 are interpreted to impose an identical burden on prevailing defendants seeking attorneys' fees, cases under these four statutes are cited interchangeably in my analysis. Le-Blanc-Sternberg v. Fletcher, 143 F.3d 748, 757 (2d Cir. 1998) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ("same standards are 'generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'"").

retaliation," plaintiff knew, or should have known, that her claim was baseless. (See Document 75 at 11, Memorandum of Law in Support of Motion for Attorney's Fees). Further, because the Court held in its Summary Judgment Order that the evidence submitted "completely refutes" the allegations of racism, they argue that there was never any merit to plaintiff's lawsuit. (Id. at 12). In addition, the FHG defendants argue that plaintiff will continue to file frivolous actions unless a monetary penalty is assessed in this action. (Id. at 12-13).

Although "awarding fees serves the valid purpose of deterring frivolous litigation – such a fee award ... serves as a 'potential chilling effect' on Congress' 'chosen instrument ... to vindicate a policy of the highest national priority.'" Incantalupo v. Lawrence Union Free School District,--- F.Supp.2d ----, No. 09-CV-3342, 2010 WL 2400169, at *11 (E.D.N.Y. June 10, 2010) (quoting Rounseville v. Zahl, 13 F.3d 625, 632 (2d Cir. 1994)). Thus, "defendants burden of establishing that a claim was 'frivolous, unreasonable, or groundless' or 'clearly merit less' is a heavy one, and 'it is very rare that victorious defendants in civil rights cases will recover attorneys' fees." Fleming v. MAXMARA USA, INC., No. 06-CV-6357, 2010 WL 1629705, at *8 (E.D.N.Y. Apr. 21, 2010) (citing Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 178 (2d Cir. 2004)). Moreover,

> it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even where the law or facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

Christiansburg Garment Co., 434 U.S. at 421-22 (1978) (citations omitted).

5

Despite the FHG defendants' assertion that plaintiff's action was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so," they have failed to meet their heavy burden to warrant the requested award of attorney's fees. The FHG defendants argue that this action was filed even though plaintiff knew or should have known that there was no discriminatory intent behind the actions taken by the FHG defendants. However, the Court denied the FHG defendants' Motion to Dismiss and concluded that plaintiff's complaint sufficiently pleaded that the FHG defendants had intimidated her and interfered with her property in retaliation for renting her property to an African American couple. (See Dismissal Order at 11-12).

In Hughes v. Rowe, 449 U.S. 5, 14 (1980), the Supreme Court reaffirmed that prevailing party defendants should be held to a stricter standard when assessing attorneys fees. The Court stated that, "[t]he fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees" in favor of the defendant. Le-Blanc-Sternberg v. Fletcher, 143 F.3d 765, 770 (2d Cir. 1998) (quoting Hughes). Here, the Court granted summary judgment for the FHG defendants because plaintiff failed to demonstrate a causal relationship between defendants' actions and plaintiff's rental to an African American tenant. The Court found that the actions taken by the defendants were not motivated by racism or discrimination, but by defendants' "zealous enforcement of punctilious land-use rules intended to preserve the unique character of a neighborhood." (See Summary Judgment Order at page 9, Document 66). Although plaintiff's evidence of discrimination was found to be insufficient, the Supreme Court has cautioned courts against looking backwards in assessing the merits of a case and engaging in "post hoc reasoning." Christiansburg Garment Co., 434 U.S. at 421-22.

Here, although plaintiff's FHA claim was weak, and was ultimately dismissed, defendants have failed to meet their heavy burden that the Court should exercise its discretion to award attorney's fees against plaintiff. See Panetta, 460 F.3d at 399 ("[p]laintiff's conspiracy claim, though perhaps very thin, was not frivolous."); Tancredi v. Metropolitan Life Ins. Co., 378 F.3d 220, 230 (2d Cir. 2004) ("Hindsight proves that [p]laintiff's allegation . . . was very weak, but it was not completely without foundation."); Kendall v. Fisse, No. 00-CV-5154, 2004 WL 1196811, at *7-8 (E.D.N.Y. May 25, 2004) (defendants' application for attorney's fees denied because plaintiff's action was "not sufficiently 'frivolous, unreasonable, or groundless'"); Brown v. Triboro, 153 F. Supp. 2d 172 (E.D.N.Y. 2001) (court refuses to award defendant attorney's fees even though the claim was ultimately dismissed on summary judgment); Davenport v. Nassau County Sheriff's Dept., 22 F. Supp. 2d 40, 41-42 (E.D.N.Y. 1998) (defendants not entitled to attorney's fees despite the Court's granting of defendants' motion to dismiss because claims were not sufficiently frivolous, unreasonable, or groundless); Rodriguez v. Bonilla, No. 02-CV-1949, 2005 WL 2291890, at *2 (D.Puerto Rico Sept. 20, 2005) (attorney's fees for defendant not warranted where the thrust of plaintiff's case lacked frivolity); Doe v. Methacton Sch. Dist., 920 F. Supp. 78, 80 (E.D.Pa. 1996) (although "[p]laintiffs were ultimately unable to create an issue of fact," attorney's fees were not warranted).

The FHG defendants further argue that in the course of this litigation, plaintiff has made threats, delayed proceedings, antagonized counsel, made frivolous motions and sought continuous extensions after submission of the evidence, which substantially increased the costs of litigation. (See Memorandum of Law in Support of Motion for Attorney's Fees, Document 75 at 12-13). Indeed, the Court stated that, "[p]laintiff is a pro se litigant who, in her numerous cases in federal court, has repeatedly ignored the rules and deadlines that all litigants are

7

expected to follow, [and] [i]n this case, she has failed to comply with the court's deadlines and has not responded to the merits of the motions before the court." (See Summary Judgment Order at 7-8). However, while tactics such as "increas[ing] the cost of the litigation through delay, obstructionism and duplicative and excessive motion practice . . . would undoubtably be relevant to consideration of the amount of any fee award, [they are not] relevant to whether a fee award is warranted in the first instance," and there is "no support for the proposition that a court may consider [this conduct] in determining whether a suit is frivolous." Fleming, 2010 WL 1629705, at *7, n. 10. See also Wang v. Peterson, No. 07 Civ. 2032, 2008 WL 5272736, at *7 (S.D.N.Y Dec. 18, 2008) ("[p]laintiffs have not engaged in the type of dishonest representations to the Court that typify the instances in which courts have exercised their discretion to award attorneys' fees"); Jones v. Cont'l Corp., 789 F.2d. 1225, 1232 (6th Cir. 1986) (a fee award to a defendant is an "extreme sanction" and should only be granted for "truly egregious cases of misconduct"). Accordingly, it is recommended that defendants' motion for attorney's fees should be denied.

Filing Injunction

Although defendants' motion for attorney's fees should be denied in this case, I recommend that plaintiff should be ordered to show cause why a filing injunction should not be entered barring her from filing any future action, pleading, amended pleading, motion or appeal in federal court without obtaining leave of Court to do so. Lau v. Meddaugh, 229 F.3d 121, 123 (2d Cir. 2000) (*per curiam*). Plaintiff has an extensive history of filing and participating in vexatious and baseless lawsuits. Including the nine cases filed in the Eastern District of New York, she has been involved in over thirty federal court cases in multiple states over the last decade. See Jenkins v. Murray, 10-CV-163 (NGG) (case herein referred to as Jenkins II, dismissed on November 18, 2009); Jenkins v. Eaton, 08-CV-713 (NGG) (the instant action,

herein referred to as Jenkins I); Jenkins v. Bock, 09-CV-3722 (NGG) (the third duplicative action plaintiff filed relating to a dispute over property in Florida);[7] Jenkins v. Phillips, 09-CV-1825 (NGG) (duplicative case relating to property in Florida transferred to the United States District Court for the Southern District of Florida on May 26, 2009); Jenkins v. Deutsche Bank, 07-CV-3754 (NGG) (case transferred to the United States District Court for the Southern District of Florida on September 12, 2007); Jenkins v. Saft, 04-CV-1491 (NGG) (case transferred to the United States District Court for the Southern District of New York on April 13, 2004); Jenkins v. Sladkus, 03-CV-4788 (NGG) (case transferred to the United States District Court for the Southern District of New York on January 26, 2004); Jenkins v. Beltrani, 00-CV-4696 (NGG) (case transferred to the United States District Court for the Southern District of New York on December 28, 2000); Jenkins v. Liu, 00-CV-1319 (NGG) (order of discontinuance signed by the Court on December 12, 2001).

Plaintiff's litigation history in the United States District Court for the Southern District of New York relating to cooperative apartments plaintiff previously owned is quite extensive. See Jenkins v. Saft, 04 Civ 559 (S.D.N.Y.) (originally filed in the Eastern District under Docket No. 04-CV-1491. Dismissed by Order dated June 27, 2005); Jenkins v. Sladkus, 04 Civ. 1595 (S.D.N.Y.) (originally filed in the Eastern District under Docket No. 03-CV-4788); Jenkins v. Beltrani, 01 Civ. 1814 (S.D.N.Y.) (originally filed in the Eastern District under Docket No. 00-CV-4696. Consolidated with Jenkins v. Dowbysz, 00 Civ. 6262 (S.D.N.Y.), and 178 East 80th Street v. Jenkins, 00 Civ. 5959 (S.D.N.Y.)). On April 10, 2001, the Honorable Richard C. Casey

---

[7] By Order dated November 11, 2009, the Court transferred plaintiff's case to the United States District Court for the Southern District of Florida and imposed sanctions on plaintiff, barring her "from filing any new actions pertaining to property located in Florida or otherwise related to the litigation recently dismissed in the Southern District of Florida without first obtaining leave of court."

signed a Stipulation of Settlement and Order disposing of plaintiff's three Southern District of New York actions. See Jenkins v. Beltran, No. 01 Civ. 1814 (S.D.N.Y.). Subsequently, on December 18, 2003, the Honorable Frank Maas found plaintiff in civil contempt and awarded $37,028.46, plus interest, to 178 East 80th Street Owners, Inc. See 178 East 80th Street Owners, Inc. v. Jenkins, 00 Civ. 5959 (S.D.N.Y.). Finally, as a result of the extensive and baseless proceedings initiated by plaintiff regarding her cooperative apartments, the Honorable Lewis A. Kaplan enjoined and restrained plaintiff from filing any lawsuit in any United States Court embodying any matter encompassed by the lawsuit and those now or previously brought by her in the Southern District of New York. See Jenkins v. Sladkus, No. 04 Civ. 1595, 2005 WL 41643, at *1 (S.D.N.Y. Jan 10, 2005).

In August 2007, a foreclosure action was filed against plaintiff in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County alleging that plaintiff had defaulted on a note and mortgage for property she owned in West Palm Beach, Florida. See Deutsche Bank Nat'l Trust Co. v. Jenkins, No 50-2007 CA 013509 (Fla. 15th Cir. Ct. Aug. 17, 2007). In response, plaintiff filed Jenkins v. Deutsche Bank, 07-CV-3754 (NGG), which this Court transferred to the United States District Court for the Southern District of Florida on September 12, 2007. See Deutsche Bank Nat'l Trust Co. v. Jenkins, No. 08-80717 (S.D. Fla). This foreclosure action set off a flurry of related case filings in the United States District Court for the Southern District of Florida. See Jenkins v. Bock et al., No. 09-82313 (S.D. Fla) (filed Nov. 17, 2009); Jenkins v. Phillips et al., No. 09-21482 (S.D.Fla) (filed June 2, 2009); Deutsche Bank Nat'l Trust Co. v. Jenkins, No. 09-80527 (S.D.Fla) (filed April 3, 2009); Jenkins v. Cook et al., No. 09-20824 (S.D.Fla) (filed March 31, 2009); Jenkins v. Bair, No. 09-20067 (S.D.Fla) (filed Jan. 9, 2009); Deutsche Bank Nat'l Trust Co. v. Jenkins, No. 08-22709 (S.D.Fla) (filed Sept. 25, 2008);

Deutsche Bank Nat'l Trust Co. v. Unknown Spouse of Lindsay Jenkins, No. 08-80717 (S.D.Fla) (filed June 12, 2008); Jenkins v. Deutsche Bank Nat'l Trust Co., No. 07-22463 (S.D.Fla) (filed Sept. 19, 2007).

Plaintiff's litigation history in the United States District Court for the Southern District of Florida culminated on October 29, 2009, when the Honorable Alan S. Gold of the United States District Court for the Southern District of Florida issued a permanent injunction prohibiting plaintiff "from filing in the Southern District of Florida any further actions related to the foreclosure of the subject Property without prior leave of Court." The Court further warned plaintiff that "[c]ontinued abuse of judicial process will lead to more severe sanctions, including monetary sanctions." See Jenkins v. Deutsche Bank Nat'l Trust Co., No. 07-22463, Docket No. 96 (S.D.Fla Sept. 4, 2009).[8]

The Second Circuit has held that the Court has the authority to issue a filing injunction when "a plaintiff abuse[s] the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive ... proceedings." Lau, 229 F.3d at 123 (internal quotations and citations omitted). See also Pandozy v. Tobey, No. 07-4897-cv, 2009 WL 1674409, at *2 (2d Cir. June 16, 2009); Iwachiw v. NYC Board of Elections, 273 F. Supp. 2d 224, 227 (2d Cir. 2003) (citing Lau, 229 F.3d at 123); Polur v. Raffe, 912 F.2d 52, 57 (2d Cir. 1990); Williams v.

---

[8] Plaintiff also filed cases in the United States District Court for the Northern District of Illinois involving her registered domestic partner, Anthony Martin-Trigona, who has been found to be a vexatious litigant by the Second Circuit. Mr. Martin-Trigona, or anyone acting on his behalf, is permanently enjoined from "bringing a variety of actions without leave of court." In re Martin-Trigona, 795 F.2d 9, 10, 12 (2d Cir. 1986) (quoting In re Martin Trigona, 737 F.2d 1254 (2d Cir. 1984). See Jenkins v. Martin, No. 05-04037 (N.D.Ill.). On appeal of the Northern District of Illinois' dismissal of the claim, the Seventh Circuit directed the district court to consider whether to open an inquiry as to whether Mr. Martin-Trigona has recruited plaintiff to act as his proxy so as to avoid the filing restrictions imposed upon him. In addition, the Seventh Circuit advised the Northern District of Illinois to "refer the matter to the District of Connecticut - or perhaps the Department of Justice, which is principally responsible for initiating proceedings in criminal contempt of court." See Jenkins v. Martin, No. 05 Civ. 4729, 2006 WL 2852300, at *1 (7th Cir. 2006).

NYC Housing Auth., No. 06-CV-5473 (NGG), 2008 WL 5111105, at * 5 (E.D.N.Y. Dec. 4, 2008). However, it is "[t]he unequivocal rule in this circuit ... that the district court may not impose a filing injunction on a litigant sua sponte without providing the litigant with notice and an opportunity to be heard." Iwachiw v. New York State Dept. of Motor Vehicles, 396 F.3d 525, 529 (2d Cir. 2005) (quoting Moates v. Barkley, 147 F.3d 207, 208 (2d Cir. 1998)).

Here, the Court has repeatedly warned plaintiff, based upon her conduct in this action, and the related lawsuit, ("Jenkins II"), as well as her conduct in plaintiff's prior actions, that she "should take care not to engage in wasteful and burdensome litigation tactics. Plaintiff is well aware that sanctions may be imposed, as they have been in the past, should she persist in such abusive conduct." (See Summary Judgment Order at 12). The Court further noted that "[p]laintiff has clearly been notified of her obligation to comply with Rule 11; this court admonishes her to comply with Rule 11 in all future filings in federal court." (See Summary Judgment Order at 12, n 12). Moreover, in the Court's May 26, 2009 Transfer Order in Jenkins v. Phillips, 09-CV-1825 (NGG), the Court warned plaintiff "that she should not attempt to circumvent transfer orders or amendment rules by filing complaints that are duplicative of matters already pending." See Id. Document 8. The Court further warned plaintiff "that the filing of additional complaints relating to the instant matter may result in sanctions, 'including barring the acceptance of any future complaints' without leave of court." Id. at 3. Thus, plaintiff has been warned about the consequences of her behavior. See In re Valle, No. 09-MC-831 (DGT), 2010 WL 231339, at *1 (E.D.N.Y. Jan. 15, 2010) ("[B]efore sanctions are imposed, a pro se litigant must be 'adequately warned of the consequences which may result from this behavior.'") (internal citations omitted).

It is clear from plaintiff's provocative language in her Rule 59 Motion, from her harassing correspondence to FHG defendants' counsel during and subsequent to the dismissal of this action, and from her vexatious litigation history, that plaintiff has not taken the Court's warnings to heart. Moreover, a review of plaintiff's litigation history reveals that despite a finding of civil contempt and an award of over $37,000.00 in attorney's fees and costs by the Southern District of New York, see 178 East 80th Street Owners, Inc., 00 Civ 5959, 01 Civ 1814, 2003 WL 22999461, at *1 (S.D.N.Y. Dec. 22, 2003), plaintiff continues to file repetitive actions and continues to wilfully disregard Court orders and directives.

Plaintiff apparently believes that if she continues to file cases, making the litigation process as costly and unbearable as possible, that her opponent will simply capitulate on her claims. Plaintiff also apparently believes that if she seeks recusal of the judges who dare to rule against her, as she did here, that her case will simply get assigned to a new judge. In the Southern District of New York, plaintiff accused Magistrate Judge Maas of sexually assaulting her. See Jenkins v. Sladkus, No. 04 Civ. 1595 (S.D.N.Y.). In the United States District Court for the Southern District of Florida, plaintiff accused United States District Judge William J. Zloch of being a "dangerous sexual predator." See Jenkins v. Cook, No. 09-20824 (S.D. Fla.). In addition, plaintiff has made numerous accusations and filed lawsuits against opposing attorneys, other litigants, unrelated individuals, and a multitude of public officials. Whether she is following Mr. Martin-Trigona's directions, or she is acting on her own, her abuse of the Court's process cannot be tolerated.

Specifically in this case, following the June 26, 2008 pre-motion conference, plaintiff demanded the production of documents from the FHG defendants. (See Document 74, Exh. H). Plaintiff was advised that the documents would be attached to the Motion to Dismiss which she

13

would be able to review and if necessary, she could request additional documents. (See Document 74, Exh. I). Rather than waiting to review the documents attached to defendants' motion, plaintiff threatened defense counsel with personal "liability for concealment." Further, plaintiff threatened to file additional lawsuits against FHG owners as well as lawsuits against other insurance carriers represented by counsel for the FHG defendants. She further threatened to accuse defendant Bruce Eaton of "racial harrassment." (See Document 74, Exh. J). When told to contact the court if she was unhappy with the discovery produced, plaintiff responded by again threatening litigation against the attorney personally, as well as, the law firm representing the FHG defendants and their insurance company. Plaintiff further accused defense counsel of "bad faith." (See Document 74, Exh. L). When the Court issued its Order on July 9, 2008, referring the discovery dispute to me, plaintiff simply responded by accusing defense counsel of being "hysterical and unprofessional." She further threatened additional lawsuits if she did not get what she wanted. (See Document 24).

Not being satisfied with her previous threats, on July 15, 2008, plaintiff again advised defense counsel that she would file additional lawsuits against counsel, her law firm, her clients and the insurance company. (See Document 74, Exh. P). After service of the Motion to Dismiss on plaintiff, on August 1, 2008, plaintiff wrote to defense counsel for the city defendant accusing her of "Gestapo tactics" and compared her conduct to "Nazi Germany." (See Document 29). Plaintiff did eventually respond to the Motion to Dismiss on August 22, 2008, when she filed her own "Motion to Strike Or, In The Alternative, Summarily Deny Defendant's Motion to Dismiss." (See Document 33). In those papers, plaintiff accused defense counsel in both Jenkins I and Jenkins II of "contemptuous behavior" and discrimination. This abusive conduct must be stopped.

Therefore, despite defendants' assertion that imposition of attorney's fees and costs would deter plaintiff from similar conduct in the future, the Court finds that monetary sanctions have not deterred plaintiff's abusive conduct. This Court finds that without a filing injunction, plaintiff "is likely to continue to abuse the judicial process and harass other parties." Safir v. United States Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986). Accordingly, the Court recommends that plaintiff be ordered to show cause why she should not be enjoined from filing any future action, pleading, amended pleading, motion or appeal in the federal courts without first obtaining leave of Court to do so. See Lipin v. Hunt, 573 F. Supp. 2d 836, 844 (S.D.N.Y. 2008) ("It is beyond peradventure that a district court possesses the authority to enjoin a [pro se] litigant from further vexatious litigation" and "a court's special solicitude towards pro se litigants does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights.") (internal quotations, parenthesis and citations omitted).

## CONCLUSION

Accordingly, defendant's motion for attorney's fees should be denied. Plaintiff should be ordered to show cause why she should not be enjoined from filing any further action, pleading, amended pleading, motion or appeal in the federal courts without first obtaining leave of Court to do so.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985).

/Signed by Judge Lois Bloom/

LOIS BLOOM
United States Magistrate Judge

Dated: August 25, 2010
      Brooklyn, New York